UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                           CASE NO. 17-11446

FACTORY SALES & ENGINEERING, INC.                SECTION "B"

    DEBTOR                                                        CHAPTER 11
*************************************************************************
FACTORY SALES & ENGINEERING, INC.

    PLAINTIFF

VERSUS                                                         ADV.P.NO. 17-1051

ELECTRICA NUEVA ENERGIA S.A. AND
JPMORGAN CHASE BANK, N.A.

    DEFENDANTS

## MEMORANDUM OPINION

This matter came before the court on the plaintiff/debtor, Factory Sales & Engineering, Inc.'s ("FSE") Emergency Motion for Temporary Restraining Order (P-2), and the objections thereto filed by Electrica Nueva Energia S.A. ("ENESA") and JP Morgan Chase Bank, N.A. ("Chase"). An order was entered on August 21, 2017 granting a temporary restraining order (P-5), and a hearing was held on August 25, 2017. At the hearing, the court determined that it needed more time to study the matter, and entered an order continuing the temporary restraining order until September 8, 2017 (P-10). On September 8, 2017, the court entered an order granting a preliminary injunction, but stated that it would write an opinion stating the reasons for that order. For the reasons set forth below, the court grants the preliminary injunction prohibiting ENESA from drawing on the letter of credit and will enter a final order in conjunction with this memorandum opinion.

I.      **Background Facts**

This dispute centers on whether ENESA is entitled to draw on a letter of credit applied for by FSE and issued by Chase for the benefit of ENESA. FSE and ENESA entered into an Agreement for Purchase and Sale of Equipment ("ENESA contract") dated August 10, 2015, that was for the construction of a facility in Santiago, Chile to produce energy by burning eucalyptus bark in a piece of equipment called a Bubbling Fluidized Bed Boiler. For the 20% down payment on the contract in the amount of $1,526,000, FSE was required to provide a letter of credit to ENESA. Chase issued the letter with the following terms:

> Subject to availability for drawing of the letter of credit as above provided, payment under this letter of credit is available upon presentation of beneficiary's signed and dated statement reading as follows:
>
> "Factory Sales and Engineering, Inc., d/b/a FSE Energy has:
>
> (1) Materially failed to and defaulted in the performance its (sic) obligations in accordance with that certain contract between Factory Sales and Engineering, Inc. d/b/a FSE Energy and Electrica Nueva Energia , S.A., entitled, "Agreement for Purchase and Sale of Equipment," dated August 10, 2015, for the supply of equipment, component parts and related performance of specified services relating to Escuadron Power Plant, located at Parque Industrial Escuadron-II KM 17.5 Concepcion-Coronel Highway, Coronel, Chile;
>
> (2) Any applicable cure or rectification period available to Factory Sales and Engineering, Inc., d/b/a FSE Energy has expired without its default having been cured or rectified; and
>
> (3) Pursuant to Article XV of the said contract, Electrica Nueva Energia, S.A. has terminated for cause the right of Factory Sales and Engineering, Inc., d/b/a FSE Energy to continue its performance under the contract, such that Electrica Nueva Energia, S.A. is therefore entitled to draw under letter of credit No. CTCS-867822 for refund of the down payment. We hereby demand the amount of USD_____ under JPMorgan Chase Bank, N.A. letter of credit number CTCS-867822."[1]

On June 6, 2017, an involuntary Chapter 7 petition was filed against FSE. On July 10,

---

[1] Exhibit B to adversary complaint (P-1).

2

2017 FSE filed a motion to convert the case to a Chapter 11 proceeding, and the court entered the order for relief on July 17, 2017.  On that date the automatic stay issued which prohibited any actions against the debtor or property of the estate.  After the order for relief was entered, FSE moved to obtain post-petition DIP financing for the express purpose of completing the work on the ENESA contract.  The court approved the DIP financing in an interim order dated July 26, 2017, a second interim order dated August 7, 2017, and a final order dated September 6, 2017.

August 17, 2017, almost one month after the automatic stay took effect, ENESA sent a letter dated August 16, 2017 via email to FSE stating that ENESA was terminating the August 10, 2015 contract for cause.  Also on August 16, 2017 ENESA presented a request to draw on the letter of credit to Chase.  FSE then filed its motion for a temporary injunction seeking to prevent Chase from making payment to ENESA.

II.     **Legal Analysis**

   A.     **Was the contract terminated by ENESA?**

The contract between the parties contains a section entitled Article XV:  Termination of the Agreement.  Article XV requires that ENESA give 60 days notice *in writing* to FSE before it could terminate the contract.  ENESA does not contend that it gave any written notice to FSE prior to the August 16 letter that it emailed on August 17, 2017.  ENESA presented its draw request to Chase on August 16, before it had even sent the letter to FSE.  ENESA, both in its memorandum and at oral argument, argued at length that FSE had failed to meet its obligations under the contract.  ENESA presented at the hearing on the motion for preliminary injunction an affidavit from its Chief Executive Officer, Jose Bertran.[2]  In the affidavit and its attachments, Mr. Bertran

---

[2] At the hearing, FSE objected to admissibility of the affidavit and a few of the exhibits attached to the affidavit.  The court deferred ruling on the admissibility of the affidavit.  The court

3

details the many problems with FSE's performance. An attachment to the affidavit, Annex F, is a letter dated June 14, 2017 that ENESA sent to FSE detailing "major problems" that are hindering the initial testing and start of operations of the boiler. The letter outlines three areas in which problems are occurring. The final paragraph of the letter states:

> We encourage to give us the final solution and put effective resources to finish the previously situations, because the are stopping a successful boiler start up and are giving us major costs and uncertainly schedule for end of the project also considering the FSE's ceasing operations.
>
> Thanks in advance for your actions to restore the time schedule.[3]

In his affidavit, Mr. Bertran states that FSE should have been finished with the project in April and discusses the problems the project had encountered; however, as of June 14, ENESA was still requesting that FSE continue to work on and make functional the boiler. ENESA does not contend that the June 14, 2017 letter constituted a notice of termination. The court understands ENESA's problem with the debtor's performance, but the contract appears to have been drafted by ENESA, and Article XV states that a written notice must be given 60 days prior to termination. It is clear that the August 16, 2017 letter ENESA sent to FSE purporting to terminate the contact does not comply with the 60 day written notice requirements of Article XV of ENESA's contract.

A major problem with ENESA's attempt to terminate the contract stems from the fact that the order for relief was entered in the FSE involuntary proceeding on July 17, 2017, one month before ENESA attempted to terminate the contract. This brought section 362(a)(3) of the

---

now holds that the affidavit is admissible. Because the debtor requested an expedited hearing of its motion, and Mr. Bertran is in Chile, it was not possible for him to get to New Orleans on such short notice. *See In re Thousand Trade Import Export Co.* 46 B.R. 684 (Bankr.S.D.Fla. 1985). Additionally, the debtor is not prejudiced by the admission of the affidavit and exhibits.

[3] The above language is an exact quote. Because the principals of ENESA are not native English speakers, there are some irregularities in the language in the letter.

Bankruptcy Code into effect. Section 362(a)(3) stays any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. Executory contracts and leases are property of the bankruptcy estate. "As property of the estate, the debtor's interests in such contracts or leases are protected against termination or other interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3)."[4] Here the ENESA contract was property of the estate and protected by the automatic stay. "Even a properly based termination–for example, one based on nonpayment of rent or other violation of a lease or contract–is stayed under [section 362(a)(3)] or under section 362(a)(6), which broadly stays acts 'to collect, assess or recover a claim against the debtor.'"[5]

Both ENESA and Chase argue strenuously that the automatic stay does not apply to the letter of credit because neither the letter of credit nor its proceeds are "property" of the debtor or the debtor's estate.[6] Although the argument that the letter and its proceeds are not property of the estate or property of the debtor is correct, an argument in reliance on that axiom misses the point as to the broad scope of the automatic stay. The debtor's rights under the contract between it and ENESA are undeniably property of the estate and those rights are protected by the automatic stay from unilateral termination after issuance of the automatic stay. Therefore, even if the court puts aside the requirement that there be a written 60 day notice of default, or if such a 60 day notice was given before the automatic stay became effective, ENESA could not unilaterally terminate the

---

[4] 3 COLLIER ON BANKRUPTCY ¶ 362.03[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), citing *In re West Eectronics Inc.*, 852 F.2d 79 (3rd Cir. 1988) and *In re Computer Communications, Inc.*, 824 F.2d 725 (9th Cir. 1987).

[5] 3 COLLIER ON BANKRUPTCY ¶ 362.03[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[6] *Matter of Compton Corp.*, 831 F.2d 586, 589 (5th Cir. 1987).

contract after the automatic stay came into effect. If the contract could not be terminated, there could not be a proper draw on the letter of credit after the stay, even if the 60 day notice of default had been given before the automatic stay came into the picture (and it was not). Thus, honor of the letter of credit by Chase would facilitate a material fraud by the beneficiary, ENESA, and constitutes an exception to the "no injunction rule" relied upon by Chase and ENESA.

This does not mean that ENESA had no rights in the bankruptcy case to seek relief. ENESA could have filed a motion for relief from the stay to terminate the contract. Additionally, relief for the non-debtor party to a contract can be found under section 365, which permits the other party to an executory contract with the debtor to move for an order requiring the debtor to assume or reject the contract. In the case before the court, FSE filed a motion on August 29, 2017 to assume the ENESA contract, and a hearing is set on that matter before the end of this month. Assumption of the contract will require the debtor to cure defaults as a condition of assuming the contract.[7]

The debtor argues that the automatic stay precludes any attempt by ENESA to terminate the contract without first making application to the bankruptcy court for relief from the stay, citing *In re Mirant Corp.*, 440 F.3d 238 (5th Cir. 2006). This is correct. Actions taken in violation of the automatic stay are generally held to be void and without effect. In its arguments, both oral and written, against enjoinment of payment on the letter of credit, ENESA focuses on the delinquent performance of FSE and does not address any of the arguments made by FSE that the August 16, 2017 letter did not terminate the contact. The court holds that the contract was not terminated before the automatic stay came into effect. Further, the court holds that ENESA's effort to

---

[7] 11 U.S.C. § 365(b).

terminate the contract in violation of the stay was ineffective, and the contract has not been terminated.

      **B.**      **Can payment on the letter of credit be enjoined?**

ENESA relies on Louisiana Revised Statute 10:5-109 which states that an issuer may only dishonor a facially valid presentation if a "required document is forged or materially fraudulent or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or the applicant." ENESA argues that this provision does not apply in this situation. The court disagrees.

In *Itek Corp. v. First Nat. Bank of Boston,* 730 F.2d 19 (1st Cir. 1984), the court discusses letters of credit:

> The very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms contained in the letter itself–when he presents, for example, a shipping document that the letter calls for or (as here) a simple written demand for payment. Parties to a contract may use a letter of credit in order to make certain that contractual disputes wend their way towards resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party. Thus, courts typically have asserted that such letters of credit are "independent" of the underlying contract. And they have recognized that examining the rights and wrongs of a contract dispute to determine whether a letter of credit should be paid risks depriving its beneficiary of the very advantage for which he bargained, namely that the dispute would be resolved while he is in possession of the money.[8]

The *Itek* court goes on to note that there is an exception to the rule that payment on letters of credit should not be enjoined, and that is the exception codified in both the Uniform Commercial Code and the Louisiana Revised Statute at issue here:

> Despite these reasons for hesitating to enjoin payment of a letter of credit, the need for an exception is apparent. Suppose the document for which the letter calls has been forged. <u>Or suppose that the beneficiary has knowingly failed to comply with</u>

---

[8] *Itek,* 730 F.2d at 24 (internal citations omitted).

7

<u>an important term contained in the underlying contract–a term that the parties intended as a precondition for the beneficiary's exercise of his right to call the letter</u>. Courts have not hesitated to examine the documents that the letter calls for to see if they show fraud.

\* \* \* \*

The Uniform Commercial Code provision here at issue embodies this "fraud" exception. The exception recognizes the unfairness of allowing a beneficiary to call a letter of credit under circumstances where the underlying contract plainly shows that he is not to do so. Yet, it also recognizes the need for courts to tread with care less they deprive the letter's beneficiary of the very benefit for which he bargained. Thus, courts have stated that the "fraud in the transaction" exception is available only where the beneficiary's conduct has "so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served."[9]

ENESA argues that it bargained for the benefit of being able to call the letter of credit in the event that FSE failed to perform under the contract, and that by enjoining payment of the letter of credit, the court is running afoul of the purpose of and the law governing letters of credit.

Here, the court finds that ENESA committed material fraud in the presentment of the letter of credit. The third condition in the presentment requirement to draw on the letter requires ENESA to certify that *pursuant to Article XV* of the contract ENESA has terminated for cause the right of FSE to continue its performance under the contact such that ENESA is entitled to draw under the letter of credit (emphasis added). Article XV of the contract states the following: "The PURCHASER will be entitled to terminate this Agreement unilaterally at any time, by written notice given to the SUPPLIER at least sixty (60) days prior to the termination date."

ENESA has neither given written 60 day notice pursuant to Article XV of the contract nor does it contend that it has. Additionally, as the court has found, ENESA has not actually terminated the contract and could not do so without seeking relief from the automatic stay that became effective July 17, 2017. As such, its statement that:

---

[9] *Itek* at 24-25 (internal citations omitted) (emphasis added).

> Pursuant to Article XV of the said contract, Electrica Nueva Energia, S.A. has terminated for cause the right of Factory Sales and Engineering, Inc., d/b/a FSE Energy to continue its performance under the contract, such that Electrica Nueva Energia, S.A. is therefore entitled to draw under letter of credit No. CTCS-867822 for refund of the down payment. We hereby demand the amount of USD $1,526,000 under JPMorgan Chase Bank, N.A. letter of credit number CTCS-867822.[10]

is simply not true and is a material misrepresentation. Because the parties negotiated that the demand for payment under the letter of credit require this specific language about the termination of the contract, it follows that the contact must actually be terminated to demand the payment. The parties could have agreed to put any demand language they wanted in the letter of credit. The first paragraph requires that ENESA certify that FSE is in material default of the contract. The parties certainly could have left it at that. Or the parties could have made the payment of the letter conditioned on a simple written demand, as was the case in *Itek*. But the parties chose a different approach; they chose to provide that ENESA was required to state the contract had been terminated pursuant to Article XV of the contract, and it is simply not true at this time, or when the request for payment was made, that the contract has been terminated, whether pursuant to Article XV or otherwise.[11]

The court emphasizes that this decision on the preliminary injunction does not determine whether FSE's performance under the contract was unsatisfactory; that is a matter for the court to decide at a later time. The court is enjoining payment on the letter of credit because one of the

---

[10] (P-8) Exhibit 2.

[11] *Archer Daniels Midland Co. v. JP Morgan Chase Bank, N.A.*, 2011 WL 855936 (S.D.N.Y.) (finding fraud sufficient to enjoin payment on a letter of credit where the request for payment under letter of credit required the production of a laboratory report, and no such report had been issued despite the beneficiary's statement that it had received a claim that complied with the terms of the letter).

three conditions that the parties bargained for and agreed upon when the letter of credit was issued was clearly not fulfilled before the call for payment on the letter of credit was made.

ENESA also reminds the court that the purpose of a preliminary injunction is to preserve the status quo and avoid injury to litigants until disputes can be resolved in an appropriate forum. It argues that in essence this is a dispute about money, and if the court finds that ENESA owes the money to FSE at a later date, then the court can order that the money be paid to FSE. The court disagrees with that argument. If the temporary restraining order and the preliminary injunction had not issued, the status quo would have been altered drastically as payment of the letter of credit to the beneficiary ENESA would have thwarted FSE's chance of reorganization at almost the very outset. It would also have prevented a determination of whether FSE had a right to assume the basic contract between the parties, which assumption would require a cure to the defaults that ENESA claims FSE committed.

The court's analysis in this case considers many factors, including the purpose of the Bankruptcy Code in a Chapter 11 reorganization case. The court entered an order for relief allowing FSE the opportunity to reorganize. FSE has a qualified lender willing to loan it money in order to allow it to finish the ENESA project. The court has approved that financing. FSE has filed a motion to assume the ENESA contract, and that matter is set for hearing later this month on October 30. The order for relief was entered only one month before ENESA attempted to terminate the contract, and this case has been pending for a relatively short time. If, after hearing evidence on the motion to assume the contact, the court allows FSE to assume the contract, then ENESA should have the working boiler that it contracted for, and the court will determine what damages it may be entitled to for any delays caused by FSE. If the court finds that the defaults by FSE cannot be cured, the court will revisit the issue of whether the contract may be terminated by

ENESA. If the court allows the contract to be terminated, then ENESA will be able to truthfully represent to the bank that it is entitled to payment on the letter of credit. Either way, the court has every intention of reaching a quick resolution in this matter.

### III.    Conclusion

The court finds that ENESA did not terminate the contract before the automatic stay issued, which prevented termination without relief from the stay. The attempted termination violated the stay and there was a material fraud by ENESA in presenting the letter of credit for payment before the proper termination of the contract between ENESA and FSE. For those reasons the temporary restraining order and the preliminary injunction were proper and necessary. Accordingly the court grants the motion for preliminary injunction. A separate order will be entered.

New Orleans, Louisiana, October 12, 2017.

_J. A. Brown_
Jerry A. Brown
U.S. Bankruptcy Judge